## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

AMERICAN FEDERATION OF
TEACHERS MISSISSIPPI, a Mississippi
Non-Profit Corporation, and
GERALDINE BENDER, individually and
in her capacity as Member of the JACKSON
FEDERATION OF TEACHERS AND PSRP,                                    PLAINTIFFS

VERSUS                                    CIVIL ACTION NO. 3:21-cv-244-DPJ-FKB

RANDI WEINGARTEN, in her official capacity
as President of the AMERICAN FEDERATION OF TEACHERS,
AFL-CIO, AMERICAN FEDERATION OF TEACHERS, AFL-CIO
An unincorporated association,
JACKSON FEDERATION OF TEACHERS AND PSRP, a
Mississippi Non-Profit Corporation,
AKEMI STOUT, individually and in her official capacity
for the JACKSON FEDERATION
OF TEACHERS AND PSRP, a
Mississippi Non-Profit Corporation,
LORETTA JOHNSON, in her official capacity for the
AMERICAN FEDERATION OF TEACHERS,
an unincorporated association and                                    DEFENDANTS
JOHN DOES 1-10

## COMPLAINT

### JURY TRIAL DEMANDED

COMES NOW, the Plaintiffs, American Federation of Teachers Mississippi, a

Mississippi Non-Profit Corporation, and Geraldine Bender, individually as a Member of the

Jackson Federation of Teachers and Paraprofessionals and School Related Personnel, by and

through their attorneys of record, the Dummer Law Group, PLLC, and files this their Complaint

for damages, and would show unto the Court the following, to-wit:

**PARTIES**

1.      Plaintiff, the American Federation of Teachers Mississippi (hereinafter "AFT-MS") is a Mississippi Non-Profit Corporation qualified to do business in the State of Mississippi, who may be served with process by its counsel of record, Dummer Law Group, PLLC, whose address is 796 Howard Ave. – First Floor, Biloxi, MS 39530.

2.      Plaintiff, Geraldine Bender, is an individual, a Member of the Jackson Federation of Teachers and Paraprofessionals and School Related Personnel, a Mississippi Non-Profit Corporation, and thus appearing in a derivative manner, and is a citizen of the State of Mississippi, who may be served with process by her counsel of record, Dummer Law Group, PLLC, whose address is 796 Howard Ave. – First Floor, Biloxi, MS 39530.

3.      Defendant, Randi Weingarten, in her official capacity as President of the AMERICAN FEDERATION OF TEACHERS, AFL-CIO, wherein she may be served at the AFT's principal place of business is 555 New Jersey Ave., N.W., Washington, DC, 20001, or wherever she may be found.

4.      Defendant, the American Federation of Teachers, AFL-CIO (hereinafter "AFT" or "National AFT"), unincorporated association and a labor union, specifically a subsidiary of the AFL-CIO union.  The National AFT's principal place of business is 555 New Jersey Ave., N.W., Washington, DC, 20001, and may be served through its President, Randi Weingarten at the same address or wherever she may be found.

5.      Defendant, the Jackson Federation of Teachers and Paraprofessionals and School Related Personnel (hereinafter "JFT") is Mississippi Non-Profit corporation qualified to do

business in the State of Mississippi, who may be served process upon its registered agent, Akemi

Stout, located at 1640 Lelia Drive, Suite 120, Jackson, MS 39216.[1]

6.        Defendant, Akemi Stout, in her individual capacity and in her official capacity, is

an adult resident of Hinds County, Mississippi, who may be served process at her residence at

457 Trent Dr., Jackson, MS 39212 or wherever she may be found.

7.        Defendant, Loretta Johnson is an adult resident of Maryland, who may be served

at her residence, which upon information and belief is 3207 Greenmead Rd., Windsor Mill, MD

21244 or wherever she may be found.

8.        Defendant, John Does 1-10, are entities who the Plaintiff has been unable to

identify or cannot properly name at this time. As such, said Defendants are unnamed individuals

or entities pursuant to Rule 9(h) of the Mississippi Rules of Civil Procedure. Plaintiff reserves

the right to amend this *Complaint* as necessary to include these names as they are discovered as

permitted by law.

JURISDICTION AND VENUE

9.        This Court has personal jurisdiction over the matter at bar under Title 28 of the

United States Code Section 1331 as this court "…shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. §

1331 As stated herein, the Plaintiff has several causes of action which this Court has exclusive

jurisdiction over, and those remaining state law claims are of the same case and controversy that

they must also be litigated herein.

10.       Pursuant to Title 28 of the United States Code Section 1391 Venue is proper over

this matter because this matter arises out of agreements between AFT-MS and JFT, who are both

---

[1] The Jackson Federation of Teachers and PSRPS has no principal office address according to the Secretary of State. Upon information and belief, Stout has moved its office to her personal home.

based in Jackson Mississippi, and the illicit financial activity of JFT, which occurred in Mississippi. *See* 28 U.S.C. § 1391(b).

11.     There is a choice of law provision in a relevant Contract (described in Exhibit G, below), but the clear language of this provision applies only to litigation brought by JFT and does not apply here. Additionally, the contract in question is void as a matter of law.  Therefore, this choice of law provision is not applicable here.

### BACKGROUND

12.     Between 2018 and 2019, the American Federation of Teachers Mississippi (hereinafter "AFT-MS") began to notice substantial cash flow problems from one of its locals unions, the Jackson Federation of Teachers (hereinafter "JFT"), which services teachers in the greater Jackson, Mississippi area.

13.     In late 2018, the AFT-MS notified the National AFT of this developing situation and requested it take action.  The AFT told the AFT-MS it would conduct an investigation through the proper channels. However, by 2019, JFT fell over one (1) year behind in their *per capita* payments to the AFT-MS and by, by default, National AFT.

14.     AFT-MS attempted to rectify this situation by allowing the JFT to make back payments to catch back up on past-due payments. *See* AFT-MS Letter to JFT, May 9, 2019, attached hereto as Exhibit A.  In accordance with its Charter, the AFT-MS demanded a date be set whereby JFT's books and records could be investigated to assist in determining what led to JFT's inability to pay its per capita dues.

15.     In violation of the terms of their charter the JFT stated its refusal to cooperate. Instead, JFT, through it then counsel, attempted to deflect its misconduct and failure to pay by alleging, amongst other things, that "in kind" payments in the form of "…staff time, supplies,

4

and travel" should be applied as a credit to its amount owed. *See* JFT Letter, May 24, 2019, attached hereto as Exhibit B. JFT concluded its letter by disregarding the fact that it owed a substantial amount of money to AFT-MS and made a specious claim that it is still in "'good standing' with ***all*** affiliated organizations[.]" *Id.* at 2.

16.     Following the JFT's response, the AFT-MS through its counsel, also sent a demand for compliance with the investigative authorities provided by the AFT-MS Constitution, Art. V. § 10(c).   The JFT, through its counsel, refused to submit to an  investigation citing that the JFT was being investigated by the AFT and the AFT's report should satisfy any inquiry the AFT-MS may have. *See* JFT Letter, June 7, 2019, attached hereto as Exhibit C. To date, AFT-MS remains perplexed as to how an alleged audit by National AFT precludes it from conducting its own audit on JFT.

17.     Upon information and belief, Loretta Johnson was working in concert with Stout to delay the investigation along with other supporters and accomplices of Stout at the AFT.

18.     Evidence of malfeasance by JFT grew as Akemi Stout, President of JFT attempted to consolidate control of the JFT, move the JFT headquarters to her personal residence, and continued to refuse disclosure of critical financial information to the parent AFT-MS.

19.     The AFT-MS sought assistance from the AFT to compel compliance with the AFT-MS's request for an audit, however, the AFT instructed the AFT-MS to stand down until its own investigation and report could be completed. This Prompted AFT-MS to become even more suspicious regarding the validity of AFT's investigation into JFT.

20.     Upon information and belief, the report had been in draft form and through the efforts of Loretta Johnson, individually and through her position as the AFT's Secretary, the

report had been stalled owing to the expected unfavorable results that would be revealed once an investigation was completed and its corresponding report published.

21.     The AFT-MS patiently waited for over one (1) year for the AFT to complete its alleged investigation and conveniently completed its report only after the AFT-MS obtained legal counsel and began sending demands to the JFT, and requests for compliance to the AFT's general counsel.

22.     The AFT's forensic report was eventually mailed by Yhasmine Bryan, CFE, CICA, a Senior Associate Director, for the AFT Finance Office, on about January 24, 2020. *See* AFT Management Report, Jan. 24, 2020, attached hereto as Exhibit D (owing to the confidential nature of the report, it has been filed under seal).[2]  The AFT-MS incorporates its findings as if fully set forth herein.

23.     Despite the report being given to Stout, and contrary to the ongoing requests by the AFT-MS, the report was withheld from the AFT-MS until February 24, 2020.

24.     The report confirmed that the JFT's executive board, including and especially its President, Akemi Stout, had been misusing JFT funds for a wide range of personal expenditures including but not limited to: 1) $7,498 unilateral increase to Ms. Stout's 401k contribution, 2) $2,352 in unexplained ATM cash withdrawals, 3) $1,793 in Square Cash transactions (colloquially known as "Cash App"), 4) $3,569 in PayPal transactions, and 5) $2,252.00 spent at various hotels, hotel restaurants and bars. *Id.* at pg. 6.

---

[2] Notably, the report acknowledges that the JFT failed or refused to provide access to the JFT's Quickbook's files, therefore Ms. Bryan "prepared the financial statements after inputting the underlying data for the above period." *Id.* This further suggests that additional items were concealed or were not provided for in the report.  Bryan explains, "my review was limited by the fact that the financial data available to me consisted solely of JFTPSP's check stubs and bank statements." *Id.*

25.     The forensic report detailed a number of payments to "Rod's Repair & Maintenance Services," which is allegedly a computer maintenance repair company.[3] *Id* at 7. JFT budgeted $2,210, $3,210, and $4,800 for computer repair expenses for 2017-2019, but actually paid $12,106, $5,523, and $8,457 respectively to Rod's Repair in those years.

26.     The report also found that Ms. Stout's salary was $48,379, but the JFT actually paid Stout $60,516 for her pay in 2018. *Id* at pg. 8.

27.     The report also found numerous occasions where JFT failed to keep receipts for deposits, cash disbursements, or debit card purchases, as required. *Id* at pg. 6-8.

28.     Due to the severity and frequency of these findings, the AFT-MS naturally assumed that the AFT would work with ATF-MS to take corrective action. That was clearly not the case as AFT continues to show absolutely no interest in working with AFT-MS to resolve this still ongoing financial issue.

29.     After continuing to receive no support, the AFT-MS requested that the National AFT administer an "emergency administratorship" (as provided for in the AFT bylaws) to take control of the JFT and correct the mismanagement of funds. *See* Bender Letter to AFT Exec. Counsel/David Strom, April 28, 2020, attached hereto as "Exhibit E."

30.     On May 14, 2020, Dr. Loretta Johnson, a close and personal friend of Stouts, responded to the AFT-MS and denied the request for an administratorship, finding that the severe financial crimes of the JFT "do not rise to the level of an 'immediate threat' under the AFT constitution, nor have the requisite 'exceptional unusual circumstances where an affiliate is incapable of taking adequate remedial measures on its own initiative.'" *See*, Johnson Correspondence to Bender, May 14, 2020, attached hereto as "Exhibit F."

---

[3] The President of this company, Roderick Jones, also owns another company called "Hydro Arts, LLC," whose Vice President is the Defendant, Akemi Stout.

31.     Throughout the process it became clear that Johnson was purposely frustrating the investigation process and not permitting the AFT-MS from undertaking its duties to ensure compliance with JFT and her friend Akemi Stout.

32.     On June 18, 2020, the JFT and AFT (without AFT-MS) entered into a secret agreement in an attempt to resolve the issues occurring at JFT.  *See* Agreement to Credit Delinquent Per Capita Dues, (hereinafter "the Agreement"), attached hereto as "Exhibit G."  This agreement was only revealed when the President for the AFT-MS learned about its execution and demanded a copy.

33.     The Agreement (excluding the AFT-MS) contains the following statements of fact regarding the debts owed by JFT to AFT-MS:

> a.   "JFT has a duty and obligation to pay per capita dues to the state federation, pursuant to Article XI, Section (sic) of the AFT constitution and Article X, Section 1(a) of the AFT Bylaws; AND"
>
> b.   "JFT currently owes a total of . . . $114,754 in delinquent per capita to AFT Mississippi for the months of March, 2019 through May, 2020; AND"
>
> c.   "AFT Mississippi could demand payment of the arrears, with interest and suspend the Local from membership, thereby revoking JFT's eligibility for all programs, grants, and conventions"

*Id.* at p 1.

34.     AFT-MS, the actual aggrieved party and parent to the JFT, was never told about these negotiations or consulted before the contract was executed by JFT and the AFT.  This contract effectively makes payments due from the JFT to the AFT-MS, now to be paid directly to the AFT, without providing for the AFT-MS's consent or consideration.

35.     The mere existence of this contract minimizes and condones the gross violations of fiduciary duties of Stout to the JFT and its Members, including the Plaintiffs.

36.     The white washing of wrongdoing by the JFT, Stout and her co-conspirators has harmed recruiting and membership retention in the State of Mississippi.

37.     The contract contains the following provision to "resolve" the delinquent payments by the JFT to the AFT-MS: "Beginning July 1st, 2020, in addition to its current monthly per capita payments to AFT for AFT and AFT Mississippi per capita, JFT shall pay . . . to AFT Mississippi $1,195.35 per month to (sic) for a total of 96 months."  *See,* the Agreement, Exhibit G, at pg. 2.  Through this agreement, JFT will repay the AFT-MS $114,753.60 over 8 years, with no penalty, no interest, and no enforcement mechanism.

38.     To date, the JFT has not made a single payment to the AFT-MS on this contract.

39.     The alleged contract does not even pay all of the amounts due for delinquent payments, falling short of the contract's own stated $114,754 balance which is owed to the AFT-MS.

40.     As such, the Agreement allows the JFT to actually financially ***gain*** from their own financial misconduct and/or mismanagement.  The AFT-MS did not, and does not, consent or agree to this Agreement which they did not sign and were not consulted with in the drafting process.

41.     It is also particularly troubling that the Agreement contains no provision for AFT-MS to even enforce the debts owed to them, especially considering that in the months since the Agreement was signed, the AFT-MS has received none of the amounts promised in the Agreement.

42.     More importantly, the Agreement fundamentally fails to resolve the root problem of the financial issues facing the JFT and its members: Akemi Stout.  Under this agreement, the AFT is allowing the individual, who was confirmed through a forensic audit to have embezzled

significant sums of money from the JFT and its members, to not only remain as President of the JFT, but be entirely forgiven her misconduct without question (without the AFT-MS's consent or approval).

43.    On August 7, 2020, the AFT-MS sent a letter to the National AFT objecting to this agreement, but similar to the prior efforts the requests were ignored.  *See* Correspondence to AFT, Aug. 7, 2020, attached hereto as "Exhibit H."

44.    Fearing that certain persons within the AFT were not properly advising the new AFT President of these developments, or worse, redirecting the AFT-MS's concerns to Johnson and other supporters of Stout, the AFT-MS sent a letter directly to National AFT President, Randi Weingarten to step in and resolve this issue. *See* Letter to Weingarten, Aug. 11, 2020, attached hereto as "Exhibit I."

45.    Unsurprisingly, Johnson contacted the AFT-MS to respond to the letter and again told the AFT-MS that nothing would change.

46.    At this point, neither Weingarten nor any official from the AFT has addressed the concerns of the AFT-MS.  In short, the AFT, Loretta Johnson and other John/Jane Does swept Stout's wrongdoing (revealed by the AFT's forensic audit) under the proverbial carpet, thereby depriving the AFT-MS of a significant amount of money (over $114,754 and growing), as well as effectively harming the JFT's members and harming the public's general confidence in the AFT within Mississippi.

47.    On September 23, 2020, there was a conference between AFT-MS and National AFT to discuss this issue, but it again failed to resolve or taken any action to address the AFT-MS's grievances.

48.     To correct the prior abuses and retrieve the monies wrongfully withheld by the JFT (which are apparently now being paid to the AFT), the AFT-MS is required to take legal action to enforce its rights.

COUNT I – DECLARATORY JUDGMENT ON THE VALIDITY OF THE AGREEMENT

49.     Plaintiffs hereby incorporate all previous allegations as if fully set forth herein.

50.     The JFT and National AFT entered into "Agreement to Credit Delinquent Per Capita Dues" ("the Agreement") in an attempt to settle delinquencies and disputes between the JFT and its parent unions, the AFT-MS and AFT. *See* Agreement, Exhibit "G."

51.     The Agreement had absolutely no input from the AFT-MS, thus there was no meeting of minds as to the AFT-MS.

52.     The Agreement was not signed or consented to by the AFT-MS or any of its representatives.  In fact, the AFT-MS was not even aware of the Agreement's existence until after it was executed by the JFT and National AFT.

53.     Neither the JFT or AFT have the authority or agency to enter into binding agreements on behalf of the AFT-MS.

54.     The Agreement attempts to settle the delinquencies owed by the JFT to the AFT-MS, but there is no offer, consideration, or acceptance by the AFT-MS.

55.     The form of the Agreement takes monies owed to the AFT-MS and transfers those to the AFT, thereby unjustly enriching the AFT for monies owed to the AFT-MS.

56.     The Agreement is void as a matter of law, as the elements to create a valid contract were not present between the parties upon which a duty is imposed.

COUNT II – (JFT AND AKEMI STOUT) BREACH OF FIDUCIARY DUTY OR ALTERNATIVELY,<br/>BREACH OF CONTRACT WITH AFT-MS

57.     Plaintiffs hereby incorporate all previous allegations as if fully set forth herein.

11

58.     The JFT has consistently failed to follow their Local's Constitution, including but not limited to their duties to the AFT-MS, which has caused the JFT and its President Akemi Stout, to fall severely delinquent in their per capita dues, and have refused to correct the illicit conduct of the JFT President and/or its Treasure/Secretary who know or should have known of this misconduct.

59.     The Charter and Constitution requires JFT to pay per-capita dues to the AFT-MS and AFT.  *See* JFT Constitution, attached hereto as Exhibit J, at Article X, Section 6(C) ("The duties of the Treasurer shall be: To forward all per capita dues and current membership lists to the state and National offices of the American Federation of Teachers and to other affiliated organizations to keep this Federation in good standing at all times.).

60.     The JFT failed to follow its own safeguard provisions in the JFT Constitution to stop the mismanagement of funds, including:

> d.   Article VIII, Section 10, requiring: "Executive Board approval [] for unforeseen expenditures in excess of ($400.00) four hundred dollars.

> e.   Article X in the un-numbered paragraph below Section 1(F) states that: "The President cannot encumber the Federation or the Executive Board or otherwise commit them to a course of action whether in word or deed relative to the expenditures or funds or the inclusion of contracts without a majority vote from said Executive Board. Except as per Article VII. Section 10." *Id.*

61.     As described thoroughly in the AFT Management Report (Exhibit D), the JFT has extensively failed to follow any procedures or safeguards to prevent the extensive financial mismanagement that has occurred.

62.     The JFT, and its President, Akemi Stout, had a fiduciary duty to its members (including but not limited to Bender), and to those it owed money to, including AFT-MS, to manage its finances to meet their monetary obligations thereto.

63.     JFT and its President, Akemi Stout, have refused to meet their monetary obligations, or take any steps to remedy the problems preventing these obligations from being met and personally profited through illegal means as reflected in the report.

64.     If the relationship between JFT and AFT-MS is construed as being a contractual rather than a fiduciary relationship, the JFT is contractually obligated to pay per capita dues pursuant to its contractual relationship with AFT-MS.

65.     Due to JFT's breach of fiduciary duty and/or Breach of Contract, the AFT-MS has incurred direct damages of at least $114,754 plus interest and fees, plus additional amounts to be shown at trial.

### COUNT III – (RANDI WEINGARTEN AND LORETTA JOHNSON) BREACH OF FIDUCIARY DUTY TO AFT-MS PURSUANT TO 29 U.S.C. 501

66.     Plaintiffs hereby incorporate all previous allegations as if fully set forth herein.

67.     Section 29 of the United States Code Section 501 reads, in relevant part, as follows:

> The Officers, agents, … and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

13

29 U.S.C. § 501(a).

68.     Randi Weingarten and Loretta Johnson are/were elected officials within the National AFT and are therefore in positions of trust and owed a duty to <u>all</u> members of National AFT and its affiliates.

69.     AFT-MS and JFT are locals of the National AFT.

70.     Throughout 2019 and 2020, Bender individually as a Member of the JFT and as President of the AFT-MS requested help from Johnson and the AFT in resolving the serious financial hardships the AFT-MS was having as a result of delinquent payments from the JFT.

71.     Bender as a Member of the JFT, and as President of the AFT-MS similarly sought assistance from Johnson and the AFT for many other issues which were being created by Stout and the JFT including:

1)      Stout and the JFT advising Members that they were the actual American Federation of Teachers Mississippi,

2)      Stout used AFT-MS signs and marketing materials at their own membership drives,

3)      Stout and the JFT representing themselves in the public as the parent organization and/or AFT-MS to the public and elected officials in Mississippi, and

4)      Stout and the JFT attempting and/or actually attending formally scheduled events while not in good standing, but voting and/or attempting to vote while not in good standing.

72.     During the entirety of this time, Johnson, the AFT and others within the AFT ignored their contractual and fiduciary duties to the detriment of the AFT-MS.

14

73.     Not only did the AFT, through Johnson, negotiated and then enter a void contract with JFT, but their unlawful attempt to resolve the issue, to the detriment of the AFT-MS, fails to resolve the root of the financial issues at JFT: the financial misconduct committed by Akemi Stout and any other unnamed co-conspirators.

74.     Despite attempting to enter the void contract for JFT to pay back delinquencies to the AFT (for the alleged benefit of the AFT-MS) the JFT has yet to pay the AFT-MS anything under the alleged contract.

75.     The AFT, through the conduct of Randi Weingarten and Loretta Johnson, continues to condone and support the JFT actions, despite its delinquencies, and that it is not in good standing according to the AFT-MS Constitution.

76.     The AFT, as parent union to their locals, has a fiduciary duty to enforce its constitution as well as to not frustrate the enforcement of terms of its local's constitutions.  The AFT has a duty to also work with its member unions to resolve issues in a timely manner and not to interfere with its member local's duties.  The AFT and Johnson have failed to do so.

77.     Additionally, the AFT has created a specific fiduciary duty by secretly interjecting themselves into a dispute between the JFT and the AFT-MS functionally interfering with a contractual relationship to the detriment of the AFT-MS, thereby violating their fiduciary duties.

78.     Pursuant to 29 U.S.C. § 501(b), the AFT-MS requested that the AFT and/or its governing officers to bring legal action against JFT to recover the damages suffered by AFT-MS, secure an accounting from JFT, or obtain other appropriate relief; and then show that, even after receiving the request for the assistance referenced *supra.*

79.     The AFT refused or failed to provide the appropriate relief within a reasonable time. *See generally* 29 U.S.C. § 501(b).

15

80.     AFT-MS has satisfied the requirements of 501(b) by providing numerous notices to AFT of the misfeasance and/or blatant and improper misconduct for the better part of two (2) years.

81.     The only "actions" taken by AFT was an audit (which took nearly a full year to obtain) and the creation of an invalid contract where the only parties who benefited were Stout, the JFT and AFT, to the detriment of the AFT-MS, Bender and its Members.

82.     The AFT and its board of directors owed a fiduciary duty to AFT-MS and/or Mrs. Bender to prevent the misconduct that Stout and the JFT have committed.  However, the AFT and its board of directors have condoned and/or sanctioned the misconduct to the detriment of AFT-MS, Bender and its Members.

83.     The AFT and its board of directors actively disregarded its fiduciary obligations to AFT-MS, Bender and its Members in favor of assisting the local union official and her co-conspirators who openly embezzled money from JFT, JFT members, AFT-MS AFT members, and AFT itself.

84.     AFT has failed to provide any actual remedy to cure and/or deter future misconduct by JFT.

85.     As such, the Plaintiffs have incurred substantial damages, fees and expenses, including attorneys' fees in amounts to be shown at trial.

### COUNT IV – BREACH OF FIDUCIARY DUTY BY TORTIOUS INTERFERENCE OF BUSINESS BY AFT NATIONAL UNDER 29 U.S.C. § 185

86.     Plaintiffs hereby incorporate all previous allegations as if fully set forth herein.

87.     The JFT and AFT-MS are contractually bound together by the virtue that the AFT-MS is the dominant AFT Union for the State of Mississippi.

88.     The JFT is the subordinate AFT union operating with the pleasure and by the exclusive permission of the AFT-MS.  This is confirmed by and through the Constitution of Jackson Federation of Teachers Paraprofessionals and School Related Personnel Local 4402, Exhibit "J."

89.     The AFT-MS is chartered and subordinate to the AFT, by and through its Constitution and By-Laws, dated February 1975, as amended February 2017.  AFT-MS Constitution and By-Laws, Feb. 2017, attached hereto as Exhibit K.

90.     It is undisputed that the JFT is seriously delinquent on its financial obligations to the AFT-MS, as required by the constitutions of the AFT-MS and JFT.  *See* Exhibits "J" & "K."

91.     Despite clear findings of severe financial misconduct, the AFT, through Loretta Johnson, have intentionally intervened into the affairs of AFT-MS.

92.     The AFT and Johnson have tortiously interfered with the JFT contractual obligations to the AFT-MS, wherein monies due to the AFT-MS by the JFT are now being paid to the AFT.

93.     The AFT and JFT entered into an unlawful contract to the detriment of the AFT-MS, in an attempt to conceal the discovered misconduct and breaches of duties by the JFT and Stout.

94.     The actions by Johnson, individually and in her officially capacity, along with that of the AFT have financially harmed the Plaintiffs as set forth herein.

95.     Because AFT is a labor organization, namely the parent organization for AFT-MS, the allegation of tortious interference will have a significant impact on labor-management relations and/or industrial peace, and its liability as a whole is triggered under 29 U.S.C § 185.

96.     The AFT-MS has been damaged in the amounts of the $114,754 owed for per capita dues, accrued interest, fees, loss of membership dues, loss of membership as well as any and all other damages as will be shown at trial.

### COUNT V – UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

97.     Plaintiffs hereby incorporate all previous allegations as if fully set forth herein.

98.     The AFT has taken only actions to assure that the JFT faces no repercussions for their conduct.

99.     The (void) Agreement between the National AFT and JFT gives the JFT a generous eight (8) years to reimburse an amount less than what is owed, with no interest and no enforcement mechanism for AFT-MS to ensure payment whatsoever.

100.    The void Agreement affords JFT the ability to pay the AFT for all monies owed to the AFT-MS, thereby creating a constructive trust and/or unjustly enriching the AFT with monies which are owed to the AFT-MS exclusively.

101.    The actions of the AFT, Johnson, JFT and Stout, seek to reward illegal conduct and enrich the perpetrators of financial misconduct to the detriment of the AFT-MS who is now suffering financially as a direct result of this misconduct.  As such, this Honorable Court should award the AFT-MS interest and/or a constructive trust for the amounts owed.

102.    The AFT-MS has been damaged in the amounts of the $114,754 owed for the per capita dues, plus any interest, fees and costs, including but not limited to legal fees, arising out of our accruing in amounts to be shown at trial.

### COUNT VI. EMBEZZLEMENT (AKEMI STOUT)

103.    Plaintiffs hereby incorporate all previous allegations as if fully set forth herein.

104.     Between 2018 and 2019, the American Federation of Teachers Mississippi (hereinafter "AFT-MS") began to notice cash flow problems from one of its local unions, the Jackson Federation of Teachers (hereinafter "JFT"), which services teachers in the greater Jackson, Mississippi area.

105.     In late 2018, the AFT-MS notified the National AFT of this developing situation and requested it take action.  The AFT told the AFT-MS it would conduct an investigation through the proper channels. However, by 2019, JFT fell over one (1) year behind in their *per capita* payments to the AFT-MS and, by default, National AFT.

106.     After a year, and numerous requests to have National AFT investigate JFT and provide an accounting for its finances, the AFT completed its alleged investigation and report only after the AFT-MS obtained legal counsel demanding compliance from JFT and AFT's general counsel.

107.     The AFT's forensic report was eventually mailed by Yhasmine Bryan, CFE, CICA, a Senior Associate Director, for the AFT Finance Office, on about January 24, 2020.  *See* AFT Management Report, Jan. 24, 2020, attached hereto as Exhibit D (owing to the confidential nature of the report, it has been filed under seal).[4]  The AFT-MS incorporates its findings as if fully set forth herein.

108.     Despite the report being given to Stout the report was withheld from the AFT-MS until February 24, 2020.

---

[4] Notably, the report acknowledges that the JFT failed or refused to provide access to the JFT's Quickbook's files, therefore Ms. Bryan "prepared the financial statements after inputting the underlying data for the above period." *Id.* This further suggests that additional items were concealed or were not provided for in the report.  Bryan explains, "my review was limited by the fact that the financial data available to me consisted solely of JFTPSP's check stubs and bank statements." *Id.*

109.    The report confirmed that the JFT executive board, including and especially its President, Akemi Stout, had been misusing JFT funds for a wide range of personal expenditures including but not limited to: 1) $7,498 unilateral increase to Ms. Stout's 401k contribution, 2) $2,352 in unexplained ATM cash withdrawals, 3) $1,793 in Square Cash transactions (colloquially known as "Cash App"), 4) $3,569 in PayPal transactions, and 5) $2,252.00 spent at various hotels, hotel restaurants and bars.  *Id.* at pg. 6.

110.    The forensic report detailed a number of payments to "Rod's Repair & Maintenance Services," which is allegedly a computer maintenance repair company.[5] *Id* at 7. JFT budgeted $2,210, $3,210, and $4,800 for computer repair expenses for 2017-2019, but actually paid $12,106, $5,523, and $8,457 respectively to Rod's Repair in those years.

111.    The report also found that Ms. Stout's salary was $48,379, but the JFT actually paid Stout $60,516 for her pay in 2018.  *Id* at pg. 8.

112.    The report also found numerous occasions where JFT failed to keep receipts for deposits, cash disbursements, or debit card purchases. *Id* at pg. 6-8.

113.    To date, there are still numerous reports that no one, outside of Akemi Stout, knows what JFT's money was used for.

114.    Owing to this ongoing taking and utilization of money by Stoutfor personal expenses and enjoyment, Mrs. Bender (a member of JFT) and AFT-MS have both been harmed; and the burden of repaying to fully compensate for this harm falls squarely on the shoulders of Akemi Stout.

115.    Plaintiffs have suffered injuries, financial and emotional in amounts to be shown at trial.

---

[5] The President of this company, Roderick Jones, also owns another company called "Hydro Arts, LLC," whose Vice President is the Defendant, Akemi Stout.

### Count VII. Breach of Fiduciary Duty – Failure to Appoint an Administrator

116.    Plaintiffs hereby incorporate all previous allegations as if fully set forth herein.

117.    Section 29 of the United States Code Section 501 reads, in relevant part, as follows:

> The Officers, agents, … and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

29 U.S.C. § 501(a).

118.    Randi Weingarten and Loretta Johnson are elected officials within the National AFT and are therefore in positions of trust and owe a duty to all members of National AFT and its affiliates.

119.    AFT-MS and JFT are locals of the National AFT.

120.    Throughout 2019 and 2020, Bender individually as a Member of the JFT and as President of the AFT-MS requested help from Johnson and the AFT in resolving the serious financial hardships the AFT-MS was having as a result of delinquent payments from the JFT.

121.    Bender as a Member of the JFT, and as President of the AFT-MS similarly sought assistance from Johnson and the AFT for many other issues which were being created by Stout and the JFT including:

1)    Stout and the JFT advising Members that they were the <u>actual</u> American Federation of Teachers - Mississippi,

21

2)      Stout using AFT-MS signs and marketing materials at their own membership drives,

3)      Stout and the JFT representing themselves in the public as the parent organization and/or AFT-MS to the public and elected officials in Mississippi, and

4)      Stout and the JFT attempting and/or actually attending formally scheduled events while not in good standing, but voting and/or attempting to vote while not in good standing.

122.    During the entirety of this time, Johnson, the AFT and others within the AFT ignored their contractual and fiduciary duties to the detriment of the AFT-MS and its members.

123.    As it pertains to events similar to those perpetrated by JFT, AFT's constitution has a provision which reads, in relevant part, as follows:

> In exceptional and unusual circumstances where an AFT state or local affiliate is incapable of taking adequate remedial measures on its own initiative, the AFT may establish an administratorship for the purpose of:
> …
> (ii) correcting financial malpractice or misappropriation or loss of funds.

*See* AFT Constitution and By-Laws, attached hereto as Exhibit L, P. 9, Art. VI, § 15(a).

124.    The AFT, as parent union to their locals, has a fiduciary duty to enforce its constitution as well as to not frustrate the enforcement of terms of its local's constitutions. The AFT has a duty to also work with its member unions to resolve issues in a timely manner and not to interfere with its member local's duties. The AFT and Johnson have failed to do so.

125.    Instead of appointing an administrator to cure the years of financial misconduct of Akemi Stout, the Defendants decided that it was not only appropriate to leave Stout in her position but to absolve her of any wrong-doing to the determinant of the Plaintiffs.

126.    The AFT's decision to refuse to appoint an administrator is a breach of AFT's fiduciary duty to AFT-MS and its Members and this breach has materially affected labor management relations for AFT-MS. Namely, by extending its financial deficit cause by JFT to the point where it cannot recuperate from the same.

127.    Pursuant to 29 U.S.C. § 501(b), the AFT-MS has requested the AFT and/or its governing officers bring legal action against JFT to recover the damages suffered by AFT-MS, secure an accounting from JFT, or obtain other appropriate relief; and then show that, even after receiving the request for the assistance referenced *supra*.  The AFT has refused or failed to provide the appropriate relief within a reasonable time. *See generally* 29 U.S.C. § 501(b).

128.    AFT-MS has satisfied the requirements of 501(b) by providing numerous notices to AFT of the misfeasance and/or blatant and improper misconduct for the better part of two (2) years.  In furtherance of this assertion, AFT-MS asserts that the only "actions" taken by AFT was an audit (which took nearly a full year to obtain) confirming the misconduct and then the creation of an invalid contract where the only parties who benefited were the JFT and AFT to the detriment of the AFT-MS.

129.    The AFT and its board of directors owed a fiduciary duty to AFT-MS and/or Mrs. Bender to prevent and/or stop the misconduct of the JFT and Stout.  However, the AFT has condoned and/or sanctioned the misconduct to the detriment of AFT-MS, Bender and its Members.

130.    The AFT and its board of directors actively disregarded its fiduciary obligations to AFT-MS, Bender and its Members in favor of assisting the local union official, and possibly her co-conspirators, who openly embezzled money from JFT, JFT members, AFT-MS AFT members, and AFT itself.

23

131.    The AFT and its board of directors has failed to provide any remedy to cure and/or deter future misconduct by JFT, Stout and/or her co-conspirators.  This is apparent by AFT's decision to leave Mrs. Stout in a position of power over JFT and its finances without any sanction despite the conclusion of the AFT's audit report.

132.    By and through is actions, the AFT and its board of directors have exacerbated the injuries of AFT-MS, Bender and its Members.

133.    As such, the AFT-MS has incurred substantial damages, fees, and expenses, including attorneys' fees in amounts to be shown at trial.

## DAMAGES

Plaintiffs herein pray for a judgment against the Defendants as follows:

a.    A declaration that the Agreement to Credit Delinquent Per Capita Dues is void as a matter of law;

b.    $114,754 in per capita dues owed by the JFT to the AFT-MS, plus interest, fees and costs;

c.    For punitive damages for the Defendants' intentional willful and wonton financial misconduct and intentional interference;

d.    For legal fees and expenses as provided for by the applicable instruments and/or as provided for by law;

e.    For all such general and specific relief as this Court may deem just and proper.

**RESPECTFULLY SUBMITTED,** this the 9th day of April, 2021.

> GERALDINE BENDER, as a Member of the
> Jackson Federation of the Teachers PSRP, Local
> 4402, and in her Professional Capacity on behalf of
> the AMERICAN FEDERATION OF TEACHERS
> MISSISSIPPI, a Mississippi Non-Profit
> Plaintiffs
>
> _Geraldine Bender_
> GERALDINE BENDER

As to form:

_s/Stephen W. Dummer_
Stephen W. Dummer, MSB 102341
Dummer Law Group, PLLC
796 Howard Avenue - First Floor
Biloxi, MS 39530
Phone: 228.392.2003
Fax: 228.392.7618
www.dlg-pllc.com

STATE OF MISSISSIPPI
COUNTY OF _Hinds_

     I, GERALDINE BENDER, as a Member of the Jackson Federation of the Teachers PSRP, Local 4402, and in her Professional Capacity on behalf of the AMERICAN FEDERATION OF TEACHERS MISSISSIPPI, a Mississippi Non-Profit, who being first duly sworn, stated on her oath that she executed this Compliant and that the matters and information contained therein are true and correct as stated therein.

_Geraldine Bender_          _04-09-21_
NAME                        DATE

SWORN AND SUBSCRIBED before me, this the _9th_ day of April, 2021.

My Commission Expires: _6/16/2023_     Notary Public
                                       [Seal]

26